Arecibo Dock & Shipping Co., y The Great American Indemnity Co., peticionarias, *v.* Corte de Distrito de Arecibo, Hon. R. Sancho Bonet, Juez, demandada.

No. 905.—*Sometido:* Mayo 22, 1933. *Resuelto:* Julio 24, 1934.

*J. Valldejuli Rodríguez,* abogado de las peticionarias; *Pedro Santana,* abogado, por la Comisión Industrial y el obrero lesionado.

El Juez Asociado Señor Wolf, emitió la opinión del tribunal.

Se trata de una solicitud para que se expida un auto de *certiorari.* Hemos tenido considerable dificultad en el estudio de este caso, toda vez que los querellados no han radicado contestación o alegato ante este tribunal. En respuesta al auto de *certiorari* expedido nos han sido remitidos los autos de la Corte de Distrito de Arecibo, mas las peticionarias no han hecho nada para indicarnos las partes de los autos que son pertinentes para la solución del problema que tenemos ante nos.

De la petición misma se desprende que la Arecibo Dock & Shipping Co. se dedica a la explotación de muelles en

Arecibo y que también utiliza lanchas para la carga y descarga de vapores. Emplea varios obreros. Uno de ellos, Isidoro Martínez, sufrió un accidente. Mientras los obreros trataban de hacer caminar la barcaza conocida con el nombre de "Redención," y mientras Martínez hacía fuerza con la palanca para ponerla a flote, resbaló, recibió un golpe en la rodilla y cayó al mar. Estuvo enfermo algún tiempo. La Comisión Industrial le concedió la suma total de $83.84 y también resolvió que tenía derecho a $7.50 semanales durante el tiempo que estuviera incapacitado.

Sucede que el sueldo mayor que Martínez hubiera percibido habría sido un promedio de $8 a la semana y las peticionarias sostienen que de conformidad con el reglamento Martínez solamente hubiese tenido derecho a la mitad de esa suma.

La corte inferior al presentársele éste y otros hechos, si bien admitió que el obrero no ganaba más de $8 a la semana, resolvió que la comisión procedió correctamente al concederle $7.50 semanales. La corte se fundó en un reglamento promulgado por la Comisión Industrial de conformidad con la Ley No. 35 de 1930, Leyes de ese año, p. 291, como sigue:

"(a) A los efectos del pago de la compensación semanal a que se refiere el inciso 2 de la división (a) de la sección 3 de la ley, el período de espera (waiting period) se empezará a contar en todos los casos desde la fecha en que el obrero se presente al médico para recibir tratamiento facultativo.

"(b) Para la liquidación de los casos se tomará como base la fecha en que el obrero se presente al médico para recibir tratamiento hasta la fecha de alta, y del total de días que resultare se descontarán los primeros ocho (8) días, (incluyendo la fecha del accidente) y el número de días restantes serán los compensables, a razón de la mitad del jornal que ganaba el obrero, excepto en los casos de accidentes de obreros empleados por compañías navieras que reciban salario por hora (diez horas constituyen un día de trabajo) a quienes se les pagará compensación sobre la base de los salarios siguientes:

"1. A los obreros que se emplean en trabajos corrientes de carga y descarga ordinaria, en tierra, que reciben $0.25 por hora, se les pagará compensación sobre la base de un salario de $2.50 diarios.

"2. Los obreros que trabajan en la carga y descarga de azúcar, a bordo, recibirán compensación sobre la base de un salario de $3.50 diarios.

"3. Los obreros dedicados al trabajo de carga y descarga de azúcar, en tierra, recibirán compensación sobre la base de un salario de $3.50 por día.

"4. A los dependientes y capataces que tienen sueldos fijos, se les pagará compensación por la mitad del sueldo que informe el patrono y nunca menos de $3 ni más de $15 por semana.

"5. Los obreros dedicados al trabajo de carga y descarga de azúcar, por ajuste, recibirán compensación a base de un jornal de $4.50 diarios.

"(c) En ningún caso la compensación será menos de tres (3) dólares, ni más de quince (15) dólares semanales."

Las peticionarias sostienen que dicho reglamento es nulo y las priva de su propiedad sin el debido proceso de ley. Una buena parte del argumento aducido en la petición es que el obrero en forma alguna tenía derecho a percibir más de $8 a la semana. Leyendo, sin embargo, el aludido reglamento, aparece que la compensación concedida a los obreros no depende del sueldo que cualquiera de ellos realmente reciba, sino que si el obrero trabaja por horas, tal compensación depende puramente de una escala artificial fijada por el reglamento sobre una base no menor de $2.50 por día. Las peticionarias no nos convencen de que al obrero Martínez, aunque sólo hubiera podido ganar $8 semanales como promedio, no hubiera podido quizá pagársele por día. Bajo estas circunstancias, era evidente que la concesión de $7.50 a la semana muy bien podría caer dentro de la escala artificial fijada por la comisión. Nada hallamos en la petición ni en los autos que demuestre lo contrario.

En lo que atañe a la cuestión de constitucionalidad, nos sentimos obligados a resolver que la misma no fué debidamente planteada ante este tribunal; en otras palabras, de los hechos expuestos no podemos ver exactamente cómo las peticionarias fueron privadas de su propiedad sin el debido proceso de ley. Tal hecho quizá pudiera hallarse en

los autos, mas la petición misma no nos convence ni puede convencernos a ese respecto.

Empero, aún suponiendo que dicho reglamento fuera inconstitucional, las peticionarias no nos demuestran ni nos convencen de que la comisión en alguna otra forma no hubiera podido otorgar una compensación que pudiera igualar o exceder a la suma concedida en este caso.

*Debe anularse el auto expedido.*